IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

YUSUF ABUZIR,                            )
                                         )
                                         )
                        Plaintiff,       )        Case No.  04 C 5835
          v.                             )
                                         )        Judge Virginia M. Kendall
BOARD OF EDUCATION OF THE CITY OF        )
CHICAGO,                                 )
                                         )
                        Defendant.       )

## MEMORANDUM OPINION AND ORDER

Plaintiff Yusuf Abuzir ("Abuzir" or "Plaintiff") sued the Board of Education of the City of Chicago (the "Board") for discriminatory termination on the basis of his national origin and age, harassment on the basis of national origin, and retaliatory discharge on the basis of his complaints about discrimination in the environment in which he worked.

The Board moves for summary judgment on Counts I and IV for discrimination on the basis of national origin and age, and on Counts II and III for retaliatory discharge. For the reasons set forth below, the Board's motion for summary judgment is granted as to Count I alleging discrimination on the basis of national origin pursuant to Title VII. The Board's Motion for Summary Judgment is also granted as to Counts II, III, and IV alleging retaliation on the basis of national origin pursuant to Title VII, discrimination on the basis of age pursuant to the ADEA, and retaliation under Illinois law, respectively. The Board did not move for summary judgment against Abuzir's claim for harassment on the basis of his national origin, and therefore, Abuzir's claim that he was harassed on the basis of his national origin stands.

# STATEMENT OF FACTS

Until his termination in 2004, Abuzir had been a certified teacher in the Chicago Public Schools since 1996. Def. 56.1 Resp. at ¶ 55.[1] He earned his associate's degree in science from Birzeit College in Jordan, his B.A. from Chicago State University in 1995, and his masters' degree in education from the University of Illinois at Chicago in 1998. *Id.* Abuzir worked at Henderson school as a fifth and seventh grade teacher until he transferred to Bunche school for the 2002-2003 school year, where he was hired as a seventh grade math teacher. Pltf. 56.1 Resp. at ¶ 8; Def. 56.1 Resp. at ¶ 56. The principal of Hendersen, Richard Richardson ("Richardson"), noted weaknesses in classroom discipline and organization in Abuzir's annual evaluations from 1997 through 2000. Pltf. Resp. 56.1 at ¶ 8. However, Richardson's overall rating was "excellent." *Id.* There was no 2001 rating and Abuzir's 2002 evaluation has no strengths or weaknesses noted. *Id.*

In August 2000, the Board placed Bunche school on probation due to poor academic performance. Pltf. 56.1 Resp. at ¶ 2. In August 2001, the Board removed Bunche principal Patrick Kenny following a public hearing and replaced him with Annie Greenlee ("Greenlee"). Pltf. 56.1 Resp. at ¶ 3-4. As Bunche's principal, Greenlee had primary responsibility for supervising all aspects of the school. Pltf. 56.1 Resp. at ¶ 5. In June 2002, Greenlee and Assistant Principal Sharon Jenkins ("Jenkins") interviewed Abuzir. Pltf. 56.1 Resp. at ¶ 6. Greenlee decided to hire Abuzir; and at the time of her decision to hire, Greenlee knew that Abuzir was a "Palestinian Arab American." Pltf. 56.1 Resp. at ¶¶ 6-7.

---

[1] Citations to "Plaintiff Yusuf Abuzir's Local Rule 56.1(b)(3)(A) Response to Defendants' Local Rule 56.1(b)(3)(9)(B) Statement of Additional Material Facts" have been abbreviated to "Pltf. 56.1 Resp." Citations to "Defendant Board's Response to Plaintiff's Local Rule 56.1(b)(3)(B) Statement of Additional Facts" have been abbreviated to "Def. 56.1 Resp."

Because Bunche was on academic probation, Greenlee testified that she informed her staff at the start of the 2002-2003 school year that she would be visiting classrooms to determine which teachers needed help. Pltf. 56.1 Resp. at ¶ 11. She also testified that she noticed problems with Abuzir's classroom management within the first month that he taught at Bunche. Pltf. 56.1 Resp. at ¶ 12. Although Greenlee monitored and disciplined other teachers with performance problems other than Abuzir, personnel documents from the same time period either no longer exist or fail to corroborate Greenlee's testimony. Pltf. 56.1 Resp. at ¶¶ 13-14. Jenkins observed Abuzir in the classroom between ten and twenty times, although she could not remember whether she observed him formally or informally. Jenkins believed Abuzir's classroom was "chaotic" but also she found it to be comparable to other classrooms at Bunche that she observed.

In September 2002, Abuzir complained to Greenlee about discipline in the school. Def. 56.1 Resp. at ¶ 58. In October or November 2002, Abuzir called Carlos Azcoitia ("Azcoitia"), the Board's Deputy Chief Education Officer, to complain about the safety and discipline problems at Bunche, the poor ratings he received from Greenlee, and the students' learning environment. Pltf. 56.1 Resp. at ¶ 21, Def. Ex. 9, Abuzir Dep. at 79-80. Abuzir made a call to Azcoitia's number on October 25, 2002 and several calls in December 2002. Pltf. 56.1 Resp. at ¶ 21; Def. Ex. 20, Azcoitia Dep. at 29, 50.

Although Azcoitia has no direct recollection of the call, his normal response to a complaint such as Abuzir's would be to inform the Area Instruction Officer ("AIO") and direct him to investigate the complaint. Def. Ex.20, Azcoitia Dep. at 33-34, 41-42. Between 2002 and 2006, Emil De Julio ("De Julio") was the AIO over the geographic region of the city in which Bunche was located. Pltf. 56.1 ¶ 17. De Julio was Greenlee's direct supervisor. *Id.* Two to three days after

Abuzir called Azcoitia, De Julio visited Abuzir's classroom accompanied by Greenlee, at which time Abuzir told De Julio about the lack of discipline and security at Bunche. Def. Ex. 9, Abuzir Dep. at 81-86. During this visit, De Julio noted that the students were not engaged in learning. Def. 56.1 at ¶ 18. The parties dispute whether Azcoitia discussed Abuzir's complaint with De Julio and dispute whether De Julio visited Bunche to investigate the complaint. Pltf. 56.1 Resp. at ¶ 17 and ¶ 22.

From late October 2002 through June 2003, Greenlee visited Abuzir's classroom on numerous occasions to observe his teaching, authored several observation forms about Abuzir's teaching, and issued several notices to Abuzir about his unsatisfactory behavior in the classroom, his failure to discipline students, and his behavior toward Greenlee personally that she considered to be disrespectful. Def. 56.1 Resp. at ¶¶ 62-70. Greenlee's first negative evaluation is dated October 31, 2002 within which she noted among numerous observations on a "classroom visitation form" that Abuzir "speaks w/an accent." Def. Ex. 22. In November 2002, Greenlee told Abuzir that he should retire. Def. 56.1 Resp. at ¶ 61 Abuzir claims that Greenlee told him that he should teach his students how to respect the American flag. Def. Resp. 56.1 at ¶ 81.[2] Abuzir claims that Greenlee told him that he should teach at an Arabic-speaking school. Def. 56.1 Resp. at ¶ 72. Greenlee denies making this statement. Def. 56.1 Resp. at 72.

---

[2] The Board objected to the use of Abuzir's declaration to support the testimony that Greenlee told Abuzir that he should retire and that he should teach his students to respect the American flag citing case precedent that all testimony in a declaration that contradicts testimony in a deposition should be stricken. The Board failed to provide any citation to a portion of Abuzir's 266-page deposition that contradicts the declared facts. Even if the Board had provided such contradictions, the declared facts are not part of an affidavit prepared after the close of discovery to fill holes in Abuzir's case; they are in a series of signed responses to Defendant's first set of interrogatories dated September 2005, more than a year before his deposition had been taken.

In late 2002 or early 2003, Greenlee received a report from a school consultant that Abuzir made racially derogatory comments toward students. Pltf. 56.1 Resp. at ¶ 30; Def. Ex. 5 at p. 94. As a result, Greenlee initiated an investigation and the Board hired an investigator to conduct that investigation. *Id.* The investigator's typed report recounts five student interviews. *Id.* One of the five students interviewed stated that Abuzir used a racial slur. *Id.* However, the investigator's incident report and field notes recount interviews of twelve students and seven out of twelve confirmed the charges. *Id.* The Board's investigator sustained the charge. *Id.* Greenlee scheduled a pre-disciplinary hearing, and the Board issued a three-day suspension and a formal warning to Abuzir to cease conduct unbecoming a teacher. Pltf. 56.1 Resp. at ¶ 31.

In April 2003, Greenlee gave Abuzir an "E-3" notice of unsatisfactory performance as a teacher. Pltf. Resp. at ¶ 34. After an E-3 notice has been issued, the Board appoints a mentoring teacher to help the noticed teacher improve. *Id.* If the teacher does not improve, the principal may recommend the teacher's termination. *Id.* Cornelius Walker was chosen by Greenlee from a list of mentors approved by the teacher's union and was appointed to mentor Abuzir. Pltf. 56.1 Resp. at ¶ 35. Greenlee prepared a remediation plan. *Id.* Greenlee and Abuzir dispute whether the plan was a draft on which Abuzir could comment, or whether the plan was forced upon him. *Id.* Walker met with Abuzir, observed his teaching, and made suggestions. *Id.* Walker's notes, among several observations, reflect that Abuzir was resistant to suggestions, unwilling to take responsibility for his teaching obligations, and was unwilling to show his students respect or command respect from them. 56.1 Resp. at ¶ 38. Abuzir disputes that Walker's documentation accurately reflects the amount of time Walker spent observing, reviewing, and mentoring Abuzir.

Greenlee considered giving other teachers E-3 notices as well, but that she felt she could only do one E-3 process at a time. Pltf. 56.1 Resp. at ¶ 36. The documentation and reviews reagarding other teachers, including Denise Hall and Philip Peffley, rated them as "satisfactory" but also criticized their discipline and classroom management skills. *Id.*

Greenlee continued to observe Abuzir's teaching and author visitations forms during the 2003-2004 school year. Def. 56.1 Resp. at ¶¶ 73-78. During this time, Greenlee offered Abuzir suggestions for improvement but Abuzir refused her suggestions. Pltf. 56.1 Resp. at ¶ 40.

In September 2003, Greenlee wrote up Abuzir for making a joke about having a bomb in a bag as he entered the school. Pltf. 56.1 Resp. at ¶ 32, Def. Ex. 5, Greenlee Dep. at 149-59. Greenlee did not hear the comment; someone at the school told her about the comment. *Id.*, Def. Ex. 18, Jenkins Dep. at 56. The staff members who overheard the comment wrote statements approximately two weeks after the incident. Def. Ex. 5, Greenlee Dep. at 149-59. As a result of the report, the Board held a hearing and Abuzir received a ten-day suspension. Pltf. 56.1 Resp. at ¶ 32. Abuzir appealed to the Board's Office of Labor and Employee Relations and his sentence was reduced to six days. *Id*

On January 27, 2004, Abuzir's 90-day remediation period was completed and Walker concluded that Abuzir failed to show evidence of pupil performance, failed to apply contemporary principles of learning, failed to provide lesson plans in accordance with instructional programs, failed to exhibit respect and understanding of students as individuals, and failed to assume his professional responsibilities. Pltf. 56.1 Resp. ¶39; Def. Ex. 39.[3] In January 2004, Greenlee

---

[3] Defendant's Exhibit 39 is subject to a Motion to Strike as unauthentic. Based upon Defendant's affidavits submitted in support of Exhibit 39, this exhibit has been properly authenticated.

recommended to the Board that termination proceedings begin against Abuzir. Pltf. 56.1 Resp. at ¶ 41. On February 28, 2004, Abuzir wrote a letter to Barbara Eason-Watkins, the Chief Education Officer, in which he claimed retaliation and discrimination that began after he spoke with Azcoitia "last November." Pltf. 56.1 Resp. at ¶ 45, Def. Ex. 48. Cheryl Nevins from the Office of Labor and Employee Relations responded by letter on March 30, 2004 stating that the Board's investigation did not support Abuzir's complaints of harassment and discrimination, and that each time he was disciplined, the Board independently reviewed the facts, upheld disciplinary recommendations, and gave him the full benefit of the Board's due process procedures. *Id.*; Def. Ex. 49.

The Board held a pre-suspension hearing on March 31, 2004, and the hearing officer recommended a full evidentiary hearing before a hearing officer appointed by the Illinois State Board of Education. Pltf. 56.1 Resp. at ¶ 43. The Board suspended Abuzir without pay pending his termination hearing. Pltf. 56.1 Resp. at ¶¶ 42, 54, Def. 56.1 Resp. at ¶ 82. The state hearing officer issued his report and recommended that Abuzir should be dismissed by the Board of Education. Def. Ex. 51. Thereafter, the Board reviewed the transcript of the proceedings, post-hearing briefs, recommendation of the hearing officer, and statements from the parties, and accepted the hearing officer's findings of fact. *Id*. The Board terminated Abuzir. Pltf. Resp. 56.1 at ¶ 54, Def. 56.1 Resp. at ¶ 83. Greenlee testified on several days of the termination hearing. Pltf. 56.1 Resp. at ¶ 42.

Initially, Abuzir's class was covered by substitute teachers and then his duties were assumed by Assistant Principal Jenkins for the remainder of the school year. Pltf. 56.1 Resp. at ¶ 53. No new hires were made to fill his position or assume his duties. *Id.* At the end of the 2004-2005 school year, the trustees of the Board voted to close Bunche school. *Id.*

**STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. Of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

**DISCUSSION**

*I.     Discrimination on the basis of National Origin*

There are two ways to show discrimination on the basis of a protected class: (i) the "direct method," whereby the plaintiff shows factual evidence of the defendant's intent to discriminate, or

(ii) the indirect, "burden-shifting" method articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). A plaintiff may show two kinds of permissive evidence under the "direct method" of proof: (i) so-called "direct evidence" of discriminatory intent; or (ii) circumstantial evidence suggesting discriminatory intent. *See Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 794 (7th Cir. 2005). "Direct evidence" of discrimination is evidence which, if believed by the trier of fact, "will prove the particular fact in question without reliance on inference or presumption." *Miller v. Borden, Inc.* 168 F.3d 308, 312 (7th Cir. 1999); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). Direct evidence claims are rare because they essentially require an admission by the decision-maker that he acted based upon the prohibited animus. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003).

Plaintiffs more commonly use circumstantial evidence to show discrimination under the direct method. The plaintiff will use evidence to create a "convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decision maker." *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006), *quoting Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Bits and pieces suggesting discriminatory intent, including statistical evidence that employees without the discriminatory characteristic received systematically better treatment, constitute circumstantial evidence. *See Rudin v. Lincoln Land Comm. Coll.*, 420 F.3d 712, 720-21 (7th Cir. 2005), *citing Troupe v. May Dept. Stores*, 20 F.3d 734, 736 (7th Cir. 1994). That circumstantial evidence, however, "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003); *see also Cerutti*, 349 F.3d at 1061.

Abuzir has not offered direct proof, such as an admission, that Greenlee or the Board discriminated against him on the basis of national origin. Rather, Abuzir relies on circumstantial evidence to create a convincing mosaic that allows a jury to infer intentional discrimination by the decision maker. Abuzir testified that Greenlee accused him of speaking with an accent, and told him that he should teach his students to respect the American flag, and that he should teach in an Arabic school. Abuzir also claims that Greenlee overreacted to a joke about a bomb, and that similarly situated non-Arabic teachers received better treatment.

Where a supervisor does not have ultimate authority over adverse employment actions, any discriminatory comments made by that supervisor are not direct evidence that discriminatory animus motivated the decision. *Ismail v. Potter,* 2006 U.S. Dist. LEXIS 75792, 15-16 (N.D. Ill. 2007)*; citing Davis v. Con-Way Transp. Central Express, Inc*., 368 F.3d 776, 783 (7th Cir. 2004). There must be a real link between the derogatory comments and the adverse employment action. *Rozskowiak v. Village of Arlington Heights*, 415 F. 3d 608, 612 (7th Cir. 2005)(citing *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001). "However, if the person who made the derogatory remarks provided input into the employment decision — and the remarks were made around the time of and in reference to that decision 'it *may* be possible to infer that the decision makers were influenced by those [discriminatory ] feelings.'" *Id*.; citing *Hunt v. City of Markham, Ill*. 219 F. 3d 649, 652-53 (7th Cir. 2000)(emphasis supplied by the *Rozskowiak* Court)(the employee's derogatory remarks unrelated to the plaintiff's termination where the employee did not have "the singular influence" over decision makers.) *Id.* In this case, Greenlee's comments can not impute discriminatory animus to the Board's decision to terminate him because Greenlee did not have ultimate authority over the adverse employment action. *See Ismail, 2006 U.S. Dist. LEXIS* at

15-16 (N.D. Ill. 2007)*; citing Davis*, 368 F.3d 776 at 783 nor has Abuzir shown that Greenlee had "the singular influence" over the Board or that circumstantial evidence exists that the Board's decision to terminate him was based upon illegitimate and discriminatory reasons.

<u>Greenlee's authority and influence over Board's decision to terminate Abuzir</u>

It is uncontested that the Board, and not Greenlee, terminated Abuzir, and Abuzir does not allege anyone other than Greenlee treated him with racial animus. Therefore, Greenlee's actions, described above, do not constitute direct evidence of discrimination unless they are imputed to the Board. *Rozskowiak*, 415 F. 3d at 612. While it is true that Greenlee wrote to the Bureau asking it to convene the appropriate state hearing connected with dismissal, evaluated Abuzir, and testified at the evidentiary hearing, the Board states that it terminated Abuzir because he failed to successfully complete the remediation process and violated a warning resolution to improve his prior behavior. It was Walker's conclusion, not Greenlee's, that Abuzir was resistant to Walker's suggestions, that he was unwilling to take responsibility for his teaching obligations, and that Abuzir failed show his students respect or command respect from them. Walker's conclusion followed a 90-day remediation process. The Board further decided to follow the hearing officer's determination that Abuzir violated a warning resolution to improve his prior behavior including Abuzir's use of racial epithets and profanity and Abuzir's joke about having a bomb in a bag. In both instances, the matters were investigated and the allegations sustained by persons other than Greenlee. Although Abuzir contends that Greenlee's discriminatory animus must be imputed to the Board the record belies that she had the "singular influence" over the Board. To the contrary, Abuzir was evaluated by numerous supervisors, assigned a mentor chosen from a list provided by the Teacher's Union, and was provided with a full evidentiary hearing. The Board independently reviewed the transcripts,

post-hearing briefs, and statements of the parties and agreed with Walker and the hearing officer's determinations. Accordingly, no evidence supports Abuzir's allegation that the Board merely rubber-stamped Greenlee's recommendation.

Even if this Court were to assume that Greenlee was the decision maker, Abuzir can not rebut the presumption of nondiscrimination that exists when an employee in a protected class is hired and fired by the same decision maker in a relatively short time span. *See Roberts v. Separators, Inc.*, 172 F. 3d 448, 452 (7th Cir. 1999); *See also Zhan v. County of Cook*, 2007 U.S. Dist. LEXIS 23430 (7th Cir. 2007);(citing *Johnson v. Zema Sys. Corp*. 170, F.3d 734, 744-45 (7th Cir. 1999)(there is a strong inference of nondiscrimination when the plaintiff is hired and fired by the same based upon the common sense notion that someone who intended to discriminate against a person would never initially hire that person). Greenlee and Jenkins interviewed and hired Abuzir and during the interview Abuzir disclosed that he was a Palestinian Arab. Although Abuzir claims that Greenlee discriminated against him on October 31, 2002 when she noted on an evaluation form that he spoke with an accent, it makes little sense that Greenlee's evaluation was based upon racial animus when she had hired him a few short months before knowing his background and his accent.

<u>The decision to terminate Abuzir</u>

Additionally, Abuzir fails to present circumstantial evidence that the decision to terminate him was based upon illegitimate and discriminatory reasons. In response to the Board's evidence that he was fired for failing to successfully complete the remediation process and for violating a warning resolution to improve his prior behavior, Abuzir claims merely that the Board's explanation is insincere. An employee's self-serving statements about his abilities are insufficient to contradict an employer's negative assessment of those abilities and do not shed any light on whether the Board

honestly based its termination employment decision on performance-related considerations. *Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998); quoting *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446, 1460 (7th Cir. 1994). Aside from presenting evidence of his ratings at Hendersen, Abuzir offers no evidence to rebut the Board's negative assessment of his abilities. Evidence that Richardson rated his performance as "excellent" is inconclusive especially in light of the fact that Richardson noted the same teaching deficiencies as Greenlee, Walker, and other school officials. Although Abuzir contests that he made no efforts to improve his teaching, Abuzir fails to rebut Walker's assessment that he was resistant to suggestions, that he was unwilling to take responsibility for his teaching obligations, and that he was unwilling to show his students respect or to command respect from them. Pltf. Resp. 56.1 at ¶ 39. Additionally, Abuzir has offered no evidence that the decisions of Walker, the investigator, or the hearing officer were improperly motivated; nor that the conclusions of the Trustees, Foster, De Julio, and Jenkins were based on anything except their legitimate, nondiscriminatory analysis of Abuzir's teaching abilities.

Although Abuzir contends that other similarly situated non-Arabic employees received favorable treatment, Abuzir has failed to show that said employees were similarly situated. "A similarly situated employee is one who is directly comparable to the plaintiff in all material respects." *Bio v. Federal Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (internal quotation omitted). Factors to consider in evaluating individuals who may be directly comparable include whether those employees: "(i) held the same job description; (ii) were subject to the same standards; (iii) were subordinate to the same supervisor; and (iv) had comparable experience, education, and other qualifications - provided the employer considered these latter factors in making the personnel decision." *Id.*, quoting *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003).

Although personnel files for all but three teachers were produced, Abuzir contends that the Board failed to produce Greenlee's classroom visitation forms associated with the other Bunche teachers. Even if the Court were to assume that the teacher's classroom visitation forms are favorable to Abuzir, Abuzir has failed to proffer evidence that other teachers were similarly situated. Abuzir has failed to identified a teacher that held the same job description as a full-time teacher, was subject to the same standards, was subordinate to Greenlee and other supervisors, and had comparable experience, education, and other qualifications. While Abuzir's brief identifies four non-Arabic teachers who had problems maintaining student discipline and problems with instructional performance, Abuzir could not identify another teacher who was suspended for conduct unbecoming a teacher, maintained a rating of unsatisfactory, and failed to successfully complete a remediation program. It is also uncontested that no other teacher made jokes about having a bomb in a bag. Pltf. Resp. 56.1 at ¶ 33. Additionally, even if the Court were to assume that Greenlee treated other teachers differently than Abuzir, there is nothing in the record to suggest that her actions are imputed to the Board's decision to terminate Abuzir or that the Board's decision was influenced by improper animus.

For the foregoing reasons, Abuzir has failed to proffer circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker under the direct method of proof.

<u>The Indirect Method</u>

Abuzir does not appear to rely on the indirect method, but even under the indirect method, Abuzir cannot establish a *prima facie* case of national origin discrimination because, for the reason's

articulated above, he has failed to present sufficient evidence that he was meeting his employer's legitimate expectations, that other similarly situated teachers were treated differently, and that the Board's legitimate business reasons for his termination are pretext. Since Abuzir fails to present evidence under either the direct or indirect methods such that a reasonable could find that the Board intentionally discriminated against him on the basis of his national origin, defendant's motion for summary judgment as to Count I alleging discrimination on the basis of national origin is granted.

## II. Title VII Retaliation Claim

As with his race discrimination claim, Abuzir may overcome the Board's motion for summary judgment with respect to his retaliation claim by proceeding under either the direct or indirect methods. *Roney v. Illinois D.O.T.*, 474 F.3d 455, 459 (7th Cir. 2007) (citing *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006)). Under the direct approach, the employee must show evidence that he engaged in a statutorily protected activity (such as bringing a Title VII claim) and as a result, suffered an adverse action. *Id.* Under the direct method, plaintiff may put forth circumstantial evidence that consists of ambiguous statements, suspicious timing, discrimination against other employees, "and other pieces of evidence none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff." *Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 903 (7th Cir. 2006)(quoting *Troupe*, 205 F.3d at 737). Alternatively, the employee may proceed under the indirect approach and show that after he engaged in statutorily protected activity, he, and not any other similarly situated employees who did not complain, was subject to an adverse action although he was performing up to the employer's legitimate job expectations. *Id.* "Failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim." *Id.* (citing *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 560

(7th Cir. 2004)). This Court need not undertake either analysis as Abuzir's claim fails at the outset because complaints about school safety and discipline are not statutorily protected activity; and to the extent that Abuzir eventually engaged in statutorily activity, the activity occurred after Greenlee's retaliatory conduct including her January 29, 2004 request to institute termination proceedings.

In order to establish retaliation, Abuzir must demonstrate that he engaged in activity that is statutorily protected under Title VII. *Small v. WW Lodging, Inc*., 106 Fed. Appx. 505, 508, 2004 U.S. App. LEXIS 15974 (7th Cir. 2004); citing 42 U.S.C. § 2000e-3 (Title VII); *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 889 (7th Cir. 2004)(Title VII). "Such activity consists of opposing or complaining about discrimination by the employer based on race, color, religion, gender, national origin, age, or disability." *Id.*; citing 42 U.S.C. § 2000e-2(a)(prohibiting discrimination based on race, color, religion, sex, or national origin); *See also Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 890 (7th Cir. 2004). Abuzir concedes that he did not complain to Azcoitia about discrimination. Pltf. Resp. 56.1 at ¶ 21. Instead, Abuzir argues that he complained about safety problems at Bunche, discipline issues, and his concerns about the students' learning environment. *Id*. Such statements are not statutorily protected under Title VII even considering the statements in a light most favorable to Abuzir. *Small,* 106 Fed. Appx. at 508, citing 42 U.S.C. § 2000e-3.

It is undisputed that Abuzir eventually complained of harassment and discrimination in his February 28, 2004 letter to Barbara Eason-Walkins, but Abuzir wrote the letter more than a year after Greenlee's first negative evaluation of Abuzir's teaching and disciplinary abilities and after Greenlee's January 29, 2004 letter requesting a termination hearing. The Board responded by letter dated March 30, 2004 stating that its investigation did not support his allegations. Abuzir's brief

does not address these matters, but instead addresses retaliation on the basis of his complaints in October or November 2002 to Azcoitia.

"It is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity." *Durken v. City of Chicago*, 341 F. 3d 606, 614 (7th Cir. 2003).(citing 42 U.S.C. § 2000e-3(a). Because Abuzir's statements to Azcoitia are not statutorily protected activity and because the majority of Greenlee's actions took place before he complained of discrimination, Abuzir's Title VII retaliation claim fails under both approaches and the Board's motion for summary judgment as to Count II alleging Title VII Retaliation is granted.

III.    *Abuzir's State Law Claim for Retaliation*

To prevail on a claim for retaliatory discharge under Illinois law, a plaintiff must prove: (1) that he or she has been discharged; (2) in retaliation for his or her activities; and (3) that the discharge violates a clear mandate of public policy. *Stebbings v. Univ. of Chicago*, 312 Ill. App. 3d 360, 365, 726 N.E.2d 1136, 1140 (Ill. App. Ct. 2000). Under applicable Illinois law, no disciplinary action, including retaliation in the form of discharge or harassment, may be taken by the Board or an employee of the board against any employee for the disclosure of information that evidences abuse of authority, or danger to the health or safety of a student or the public. 105 ILCS 5/34-2.4c (2007).

In this case, it is uncontested that Abuzir was discharged satisfying the first prong. As to the third prong, Abuzir has presented evidence that he complained to Azcoitia, the Board's Deputy Chief Education Officer, about safety problems at Bunche, discipline issues, and his concerns about the students' learning environment. Based upon the aforementioned Illinois statute, Abuzir's complaint

concerned student safety, and therefore, implicated a clear mandate of public policy. However, Abuzir failed to proffer evidence from which a reasonable jury could find that he was discharged in retaliation for his activities.

Under Illinois law, Abuzir must present evidence from which a reasonable jury could find that his discharged was "in retaliation" for his activities. In other words, Abuzir must show causation. *See Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526, 530, 519 N.E.2d 909, 912 (Il. 1988)(where the Illinois Supreme Court requires pleading a causal relationship between the employee's activities and the discharge.); *See also Webber v. Wight & Co.*, 368 Ill. App. 3d 1007, 1022-23, 858 N.E.2d 579, 593 (1st Dist. 2006)(Where the First District held that Plaintiff's proposed jury instructions were erroneous due to his failure to include the causation element of retaliatory discharge). As with his Title VII claim, Abuzir's state law retaliatory discharge claim hinges upon Greenlee's retaliatory conduct, and not the Board's, but Abuzir contends that Greenlee's conduct is imputed to the Board. As previously stated, Abuzir failed to proffer evidence that Greenlee was the decision maker with respect to his discharge, or that the Board's decision to discharge him was based on an assessment made in retaliation as opposed to a legitimate evaluation of Abuzir's teaching abilities. The record reveals that the Board considered Walker's, the investigator's, and the hearing officers' determinations, but Abuzir does not proffer evidence that they retaliated against him nor rebut their findings. For the aforementioned reasons, Abuzir fails to proffer evidence that the Board discharged him in retaliation for his complaint to Azcoitia, and the Board's motion for summary judgment on Count IV alleging retaliatory discharge under Illinois law is granted.

IV.    *Discrimination on the basis of Age*

The Court analyzes Abuzir's claim of discrimination on the basis of age in the same manner as his claim for discrimination on the basis of race. Abuzir may proceed under either the direct or indirect method of proof. For the foregoing reasons, Abuzir has not proffered evidence under the direct or indirect method such that a reasonable jury could find that the Board terminated him on the basis of his age.

Greenlee hired Abuzir when he was in his early 50's. From the fact that Greenlee hired Abuzir when he was already more than ten years into the protected class, this court can infer that his later termination was not due to his age. *See Ritter v. Hill N' Dale Farm,* 231 F. 3d 1039, 1044 (7th Cir. 2000); (citing *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1147 (7th Cir. 1994);(*See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 744-45 (7th Cir. 1999); *EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 152 (7th Cir. 1996)(Where the Court reasoned that it seems rather suspect to claim that the individual that hired the plaintiff at age 47 had suddenly developed an aversion to older people two years later."). Although this fact does not foreclose a finding of discrimination, it creates an inference of nondiscrimination. *Id.*; citing *Johnson*, 170 F. 3d at 745.

There is only one comment in the record concerning Abuzir's age: during one meeting, Greenlee suggested that Abuzir consider retirement. An isolated comment to Abuzir that he should consider retirement, or asking him to retire, does not constitute an admission that his termination had a discriminatory motive. Nor does Abuzir's claim fair any better when Greenlee's comment is considered with the other evidence supplied by him. After his termination, Abuzir's duties were assumed by substitute teachers and then Assistant Principal Jenkins for the remainder of the school year. It is uncontested that no new hires were made to fill Abuzir's position. At the end of the 2004-2005 school year, the trustees of the Board voted to close Bunche school. As such, Abuzir cannot

demonstrate that he was "replaced" by a younger teacher.[4]  Even if the Court were to agree that Jenkins qualifies as a replacement, Abuzir has not presented evidence that would overcome the common actor presumption in this case.  Although Richard's annual evaluations rated him as "excellent," Richardson, like Greenlee and other supervisors, also noted weaknesses in classroom discipline and organization in Abuzir's annual evaluations from 1997 through 2000.  Pltf. 56.1 Resp. at ¶ 8.  Even drawing all reasonable inferences in favor of Abuzir, on the basis of this evidence, no reasonable jury could conclude that the Board discriminated against Abuzir on the basis of his age under the direct method.

Abuzir does not appear to rely upon the indirect method, but even under the indirect method, Abuzir cannot establish a *prima facie* case of age discrimination.  Putting aside factual questions about his performance (the central issue in the race discrimination charges), Abuzir cannot point to similarly situated employees outside the protected class who were treated differently.  To the contrary, the individuals to whom Abuzir points - other teachers at his school who received negative performance reviews during the same year he received negative reviews, yet were not terminated - were older than Abuzir.  Philip Pfeffley was age 57, Angela Ward was age 55, Frankie Kincaid was age 60, and Barbara Dydo was age 56.  The only younger individual, 33-year-old Nettye Hill, was demoted from her position as a result of negative reviews.

---

[4]  Jenkins is ten years younger than Abuzir and this Court recognizes the *Hartley* decision that ten years is a substantial age difference even if Jenkins is within the protected age class, however, Jenkins and other substitute teachers assumed Abuzir's duties.  *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997).

Abuzir has not proffered evidence under the direct or indirect method such that a reasonable jury could find that the Board terminated him on the basis of his age, and therefore, the Board's motion for summary judgment is granted as to Count III alleging discrimination on the basis of age.

V.     *Hostile Work Environment/Harassment Claim*

The Board's Motion for Summary Judgment does not address Abuzir's harassment claim brought pursuant to Title VII.  The Board's Reply does not address the merits of the harassment claim but instead insists that no such claim was pleaded in the first instance pointing out that Abuzir's Second Amended Complaint states that his claims are for "national origin discrimination, age discrimination, and retaliatory discharge.  Defendant's Reply, p. 11.  Despite the Board's assertions, the Board answered Abuzir's First Amended Complaint[5] including Count I entitled "national origin discrimination/harassment."  Therefore, the Board addresses the harassment claim for the first time in its Reply brief.  Arguments that a party raises for the first time in a reply brief are waived. *Daggy v. Chi. Kenworth, Inc.*, 2003 U.S. Dist. LEXIS 16745, *12 (N.D. Ill.2003); citing *Fenster v. Tepfer & Spitz,* Ltd., 301 F.3d 851, 859 (7th Cir. 2002)(failure to address retaliation claim in summary judgment motion constituted waiver resulting in denial of summary judgment).  The Board's Memorandum of Law in Support of its Motion for Summary Judgment states that Abuzir brought four counts including "national origin discrimination/harassment" under Title VII.  Additionally, the parties joint status report includes the claim of harassment, and the word "harassment" is contained in the heading of Count I and four times in the allegations of Count I in both the First and Second Amended Complaints.  The Board was sufficiently on notice of Abuzir's

---

[5]  On May 5, 2005, the Board presented an oral motion to have its answer to plaintiff's first amended complaint stand as its answer to plaintiff's second amended and the Court granted said motion.

claim that he was harassed on the basis of his national origin in violation of Title VII and failed to address it.  As a result, this matter is not before the Court and survives summary judgment. So ordered.

Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:  July 6, 2007